UNITED STATES of America,
Plaintiff-Appellee,

v.

Leonard Seth TALLEY,
Defendant-Appellant.

No. 84–5139.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1986.

Decided June 5, 1986.

Lynne Lasry, Asst. U.S. Atty., Roger W. Haines, Jr., San Diego, Cal., for plaintiff-appellee.

Judy Clarke, Carl Yaeckel, Federal Public Defenders, San Diego, Cal., for defendant-appellant.

Before KENNEDY and SCHROEDER, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

Leonard Seth Talley appeals his conviction by a jury of violating 18 U.S.C. § 2113(a) (bank robbery by force and violence and intimidation). The gravamen of his argument on appeal is that the trial judge erred when she allowed the government to call a court-appointed psychiatrist as a rebuttal witness, despite the fact that the psychiatrist was appointed primarily for the defendant's benefit, and despite the fact that the defendant did not call the witness during his defense. The chief issues on appeal are: (1) whether this court recognizes an "attorney-psychotherapist-client" privilege; (2) whether, on the facts of this case, any such privilege was waived; (3) assuming there was a waiver, what was the legal effect of such a waiver; and (4) assuming the district court erred in allowing the psychiatrist to testify, whether such error was harmless. Because we find that such error, if indeed there was one, was harmless, we need not decide the first three issues, and we affirm the district court.

I

On January 20, 1984, appellant robbed the Security Pacific National Bank in Na-

tional City, California, of $624. Appellant held a gun to the head of a man standing outside the bank and ordered him to walk into the bank and get money. Appellant stayed at the door, avoiding the surveillance camera. After getting the money, appellant fled the scene and was arrested approximately one-quarter mile northeast of the bank. He was positively identified by the bank manager.

At trial, appellant, testifying in his defense, admitted the robbery, but said that a man named George had forced him to do it. Appellant also called Steven Bucky, a clinical psychologist, to testify on his behalf. Bucky testified that appellant suffered from a schizoid personality disorder that interfered with his everyday functioning so much that at times he lost contact with reality. However, in response to a direct question, Bucky stated that, in his opinion, appellant was not legally insane.

In presenting its rebuttal case, the government called Philip Solomon, a psychiatrist. Solomon had examined appellant by court order, but the order was made at appellant's request, and primarily for appellant's benefit. Appellant decided not to call Solomon during the presentation of his defense. Over appellant's objection, the district court allowed Solomon to testify on the government's behalf. On direct examination, Solomon stated the conclusions he had reached in his written report, which had been provided to both sides. Specifically, Solomon's opinion was that appellant was sane at the time the crime was committed, and that he was an "imaginative fellow." The government also summarized some of Solomon's testimony in its closing argument.

A judgment of conviction was entered on June 11, 1984. Appellant timely filed a notice of appeal on June 15, 1984. This court has jurisdiction of the appeal under 28 U.S.C. § 1291. The government moved to strike the written order appointing Solomon from the record on appeal. The

* Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

government also moved to augment the appeal record with the reporter's transcript of an April 13, 1984, conference in chambers between counsel for both parties and the district judge. This court denied the motion to strike, and granted the motion to augment the record.

## II

Appellant argues that the trial court erred when it allowed Solomon to testify because the communications between appellant and Solomon were protected by an "attorney-psychotherapist-client" privilege. He further argues that because of this privilege the district judge should have prohibited the psychiatrist from testifying. The government counters that appellant waived any such privilege in two ways: first, by asserting the insanity defense at trial; and second, by agreeing that Solomon's report would be provided to the government. As noted above, we find it unnecessary to decide these issues because there exists no reasonable possibility that the jury could have found appellant insane even in the absence of Solomon's testimony and, therefore, if any error was committed in permitting Solomon to testify, it was harmless.

Solomon's testimony was mostly cumulative to Bucky's. Every fact contained in Solomon's testimony that could possibly have influenced the jury toward the conclusion that appellant was sane came out first in Bucky's testimony. Bucky testified that he had reviewed Solomon's April 17, 1984, report on appellant. Bucky further testified that Solomon had found appellant not mentally ill; not hysterical or schizoid or a victim of cerebral palsy; and not suffering from a mental disease or defect causing him to be insane. In his testimony, Solomon said little more about his own conclusions than Bucky had already conveyed to the jury. Perhaps Solomon described his conclusions a bit more colorfully than Bucky had described them, but the basic information was the same: Solomon had found appellant sane.

Equally important, the jury had overwhelming evidence of appellant's sanity completely aside from Solomon's conclusions. Appellant himself testified that he believes bank robbery is wrong. He further testified that he believes he is capable of obeying the law. Bucky corroborated appellant's testimony, saying that appellant "certainly was aware that [bank robbery] was wrong." Asked if he thought appellant knew the difference between right and wrong, Bucky answered affirmatively. He also said that appellant is "mostly" capable of conforming his conduct to the law. Probably the most persuasive evidence of appellant's sanity was Bucky's response to the government's last query on cross-examination: "He is not legally insane, in my opinion." Finally, the government's psychiatric expert, Haig Koshkarian, also testified that appellant did not suffer from any mental disease or defect and that appellant was sane.

## III

■ The generally-accepted rule is that nonconstitutional errors are considered harmless if, more probably than not, the jury would have reached the same conclusion absent the erroneous ruling. *See United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir.1977). Errors in such matters as "rulings on the admissibility of evidence where Fourth Amendment claims are not involved ... generally have been considered 'nonconstitutional.'" *Id.* It is true that some of the language in *United States v. Alvarez*, 519 F.2d 1036, 1046–47 (3d Cir. 1975), implies that the "attorney-psychotherapist-client" privilege has constitutional underpinnings. But the constitutional nature of the privilege has subsequently been rejected. *See United States ex rel. Edney v. Smith*, 425 F.Supp. 1038, 1054 (E.D.N.Y.1976), *aff'd*, 556 F.2d 556 (2d Cir.), *cert. denied*, 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977). Judge Weinstein warned against freezing such a privilege into "a constitutional form not amenable to change by rule, statute, or further case-law development." *Id.* We agree that if such a privilege exists in this circuit, it derives its vitality from common law developed "in the light of reason and expe-

rience," Federal Rule of Evidence 501, and not from the Constitution. Thus, if the district court in the present case erred when it admitted Solomon's testimony, it was harmless error provided that, more probably than not, the jury would have found appellant sane even without Solomon's testimony.

■ Such a standard is clearly met in this case. As enumerated above, the evidence of appellant's sanity was overwhelming, Solomon's testimony aside. Indeed, the uncontradicted evidence of appellant's sanity was so clear that beyond a reasonable doubt the jury would have found him sane even without Solomon's testimony. Therefore, any error that the district court may have committed in admitting Solomon's testimony was harmless.[1]

The judgment of the district court is affirmed.

---

1. Although appellant's brief is far from clear on the point, appellant also appears to be arguing that if his attorney waived the privilege, it deprived him of effective assistance of counsel. Of course, in light of our holding that the trial court's admission of Solomon's testimony was harmless error, the ineffective assistance argument is without merit.