Dan MILLER, et al., Plaintiffs,

v.

Paul PANCUCCI, et al., Defendants.

No. SACV91–255–AHS (RWR).

United States District Court,
C.D. California.

Jan. 21, 1992.

MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

RONALD W. ROSE, United States Magistrate Judge.

## BACKGROUND

Plaintiffs commenced this action by filing a complaint on May 7, 1991, alleging civil rights violations under 42 U.S.C. §§ 1983 and 1988, municipal liability, and claims under the Court's supplemental jurisdiction, 28 U.S.C. § 1367. The case is in the discovery stage and this motion seeks an order compelling the City of San Bernardino, Paul Panucci, Patrick Pritchett, and Gwen Lucas [Defendants][1] to produce certain documents. The action arises out of the alleged excessive force used on Plaintiff, Dan Miller, when he was arrested March 8, 1990.

The discovery dispute addressed here concerns the validity of certain objections made by Defendants to Plaintiffs' Request for Production of Documents. The document requests and responses at issue are set forth in Appendix A.

## DISCUSSION

Defendants' objections to the above requested documents are made on multiple grounds, i.e. the Requests violate the privacy rights of Defendants, are irrelevant, overbroad, and otherwise privileged. Prior to reaching the privilege questions, the Court will determine whether any of the other objections should be sustained.

## I. RELEVANCE

The first analysis, by necessity, encompasses relevance. If the requested information is not relevant to the case at hand, or reasonably calculated to lead to the discovery of admissible evidence, the inquiry ends.[2] Defendants' claim those

Emile M. Mullick, San Bernardino, Cal., for plaintiffs.

James F. Penman, City Atty., Richard J. Morillo, Sr. Asst. City Atty., San Bernardino, Cal., for defendants.

1. The individual defendants are police officers with the City of San Bernardino Police Department.

2. For purposes of this discussion, the terms "relevant" and "reasonably calculated to lead to the discovery of admissible evidence" are used interchangeably.

documents sought in Requests Nos. 3, 5, 9, 13, 15, and 18 are irrelevant. Based on the allegations made in the complaint the Court can discern few more relevant documents than the documents sought in Requests Nos. 9, 13, 15, and 18. Such documents could arguably be used pursuant to F.R.E. 404(b), 407 or 608(b).[3] Moreover, the requested documents, if they exist, may prove the sort of policy necessary to prevail against Defendant City of San Bernardino under the analysis of *Monnel v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Parties are permitted to discover any relevant nonprivileged matter. Fed. R.Civ.P. 26(b)(1). This rule is construed very broadly, encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues. *Id.* at 351, 98 S.Ct. at 2389.

> To limit an examination to matters relevant to only the precise issue presented by their pleadings, would not only be contrary to the express purpose of Rule 26...., but also might result in a complete failure to afford plaintiff an adequate opportunity to obtain information that would be useful at the trial.
> *Stevenson v. Melady*, 1 F.R.D. 329, 330 (C.D.N.Y.1940).

■ This is true not only of depositions but of other discovery devices permitted by the rules. The requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms. Discovery of information that has no conceivable bearing on the case should not, however, be allowed. 8 *C. Wright & A. Miller, Federal Practice and Procedure*, § 2008 (2d Ed.1983 & Supp. 1990).

■ Request No. 3, on the other hand, seeks all personal complaints made against Defendants Pancucci, Pritchett, and Lucas alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention. The complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice. Thus, Defendants' objection to Request No. 3 will be sustained to the extent the Request seeks all personal complaints alleging misuse of firearms or equipment, racism, or prejudice.

■ Similarly, Request No. 5 seeks all government tort claims filed with Defendant City of San Bernardino in which Defendants Pancucci, Pritchett, or Lucas are identified as the responsible employee (Plaintiff states that responses may be limited to claims of false arrest, civil rights violations, assault and battery, brutality, intentional infliction of emotional distress, dishonesty, corruption, perjury, fabricated probable cause, and bigotry). Plaintiffs have not raised any claims concerning bigotry in their complaint. Thus, Defendants' objection to Request No. 5 will be sustained only as to claims of "bigotry."

As the documents in Requests Nos. 3 (in part), 5 (in part), 9, 13, 15, and 18 may reveal evidence to support Plaintiff's allegations in the complaint, the documents are relevant. Thus, Defendants' relevancy objections, except as otherwise limited above, are without merit and are overruled.

## II. OVERBREADTH

■ Defendants next contend that Requests Nos. 3, 4, 5, and 16 are overbroad. Request No. 3 seeks all complaints made against Defendants Pancucci, Pritchett, and Lucas alleging excessive force, etc. Defendants claim this request is overbroad

---

3. Defendants, however, argue that evidence of prior bad acts is inadmissible to prove they exhibited any evil intent in the incident in question, citing *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Yet, under Rule 404(b) of the Federal Rules of Evidence, evidence of prior bad acts is admissible to prove motive, opportunity, preparation, plan, knowledge, identity, or *absence of mistake* or *accident*.

as it does not indicate which types of excessive force complaints are sought. As this objection is without merit, Defendants' objection to Request No. 3 is overruled.

■ Next, Request No. 4 seeks *each* internal investigation file involving Defendants Pancucci, Pritchett, and Lucas. This request is clearly overbroad and Defendants' objection to Request No. 4 is sustained.

■ Request No. 5 seeks all government tort claim filed with Defendant City of San Bernardino in which Defendants Pancucci, Pritchett, or Lucas are identified as the responsible employee (Plaintiff states that responses may be limited to claims of false arrest, civil rights violations, assault and battery, brutality, intentional infliction of emotional distress, dishonesty, corruption, perjury, fabricated probable cause, and bigotry). The request for documents concerning "civil rights violations" in such general terms is clearly overbroad. Thus, Defendants' objection to Request No. 5 is sustained only as to claims of "civil rights violations."

■ Finally, Request No. 16 seeks performance evaluations of Defendants Pancucci, Pritchett, and Lucas. This request is also clearly overbroad as Defendants are evaluated in areas which bear no relationship to the claims presented in this case. Defendants' objection to Request No. 16 is therefore sustained.

## III. PRIVILEGES

### A. OFFICIAL GOVERNMENT PRIVILEGE

#### 1. *Federal Law Applies*

■ As a threshold matter, the Court must initially determine whether federal or state law controls as to an asserted privilege in a civil case brought under a federal statute. In this analysis, Defendants are objecting to disclosure solely on the basis of state created privileges.

The case at bar was brought under a federal statute, 42 U.S.C. § 1983, "which was enacted to vindicate federal rights against deprivation by persons acting under the color of state law." *Youngblood v. Gates,* 112 F.R.D. 342, 344 (C.D.Cal.1985). The Supreme Court has held that questions of evidentiary privilege arising in the course of the adjudication of federal rights are governed by the principles of federal common law. *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989), citing Rule 501 of the Federal Rules of Evidence.[4]

This theme has been interpreted by the Ninth Circuit to include the discovery of personnel files, despite claims of state-created privileges. *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1519 fn. 6 (9th Cir.1987).[5] In this district, *Youngblood* held:

> In federal question cases, the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege.

112 F.R.D. at 344.

In a federal civil rights case, the state's interest is that of a litigant and not, as in diversity cases, that of a sovereign whose law is being applied in a federal forum. *Kerr v. United States Dist. Court for North. Dist.,* 511 F.2d 192, 197 (9th Cir. 1975).

> It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities. If state law controlled, state authorities could effectively insulate them-

---

**4.** Rule 501 provides in pertinent part:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in the rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, *State,* or political subdivision therefor *shall* be governed by the principles of the

common law as they may be interpreted by the courts of the United States in light of reason and experience. (Emphasis Supplied).

**5.** As to the remaining privileges asserted by Defendant, federal law applies as held under *Zolin, supra.*

selves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims. *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D.Cal.1987).

Thus, pursuant to *Kerr*, *Kelly*, and *Youngblood*, reference to federal law controls on issues of privilege. *Id.*

Notwithstanding the clear directives set forth in *Kerr*, *Kelly*, and *Youngblood*, Defendants rely solely on *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D.Cal.1990) in asserting that state law should control on the issue of privilege.[6] In *Martinez*, the court found that although the Ninth Circuit has held that federal discovery law applies in § 1983 actions, nothing precluded the application of state law when that application would not be inconsistent with federal law. 132 F.R.D. at 681. While that assertion has initial appeal, *Martinez* is unpersuasive as it failed to consider or analyze the total lack of consistency between state and federal law regarding discovery and privileges.

The federal policy of discovery is a liberal one. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part that:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Applying California law would result in Plaintiffs' access to police files being severely limited. California Evidence Code § 1043 provides:

(a) In any case in which discovery or disclosure is sought of peace officer personnel records or records maintained pursuant to section 832.5 of the Penal Code or information from those records, the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body upon written notice to the governmental agency which has custody and control of the records. The written notice shall be given at the times prescribed by subdivision (b) of Section 1005 of the Code of Civil Procedure. Upon receipt of the notice the governmental agency served shall immediately notify the individual whose records are sought.

(b) The motion shall include all of the following:

(1) Identification of the proceeding in which discovery or disclosure is sought, the party seeking discovery or disclosure, the peace officer whose records are sought, the governmental agency which has custody and control of the records, and the time and place at which the motion for discovery or disclosure shall be heard.

(2) A description of the type of records or information sought.

(3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records.

(c) No hearing upon a motion for discovery or disclosure shall be held without full compliance with the notice provisions of this section except upon a showing by the moving party of good cause for noncompliance, or upon a waiver of the hear-

---

**6.** In pursuing this course, Defendants apparently believe discovery will be denied merely by their boilerplate reference to these state laws, or more disturbing, is the conclusion that Defen-dants believe the Court will undertake an automatic *in camera* inspection of police personnel files, unaided by counsel's input.

ing by the governmental agency identified as having the records.

Under § 1043, the requesting party must make a showing of materiality, which is not required under Fed.R.Civ.P. 26(b)(1). The sought after information only need be "reasonably calculated to lead to the discovery of admissible evidence." F.R.Civ.P. 26(b)(1). In fact, as set forth in F.R.E. 402, "materiality" of evidence plays no part in the federal scheme. Evidence need only be "relevant" under F.R.E. 401.

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.
>
> F.R.E. 402.

As California law plays no part in construing F.R.E. 401 and 402, there is no need to consider state law in determining privilege questions.

Further, under § 1043, the burden of overcoming the assertion of this privilege is clearly on the requesting party (Plaintiffs). In federal cases, however, the burden of resisting discovery is on the party opposing discovery (Defendants). *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (parties opposing discovery are required to carry a heavy burden of showing why discovery should be denied).

Added to these glaring conflicts with federal law, the requesting party under California law must submit affidavits showing good cause for the disclosure as well as the existence of the records. Calif.Evid.Code § 1043. In federal privilege cases, the party resisting discovery has the burden of specifically identifying the records at issue

so that the requesting party has an opportunity to challenge the assertion of the privilege. *United States v. American Telephone and Telegraph Company*, 86 F.R.D. 603 (D.D.C.1979); *United States v. Exxon Corp.*, 87 F.R.D. 624, 637 (D.D.C. 1980). Lastly, contrary to the requirements of *Kelly* and *Youngblood*, California law fails to require a state official in a policy making position to come forward with a declaration as to why disclosure should not be made.

As the California rules for discovery and privileges are fundamentally inconsistent with those of the federal rules, federal law, especially as delineated in *Kerr, Kelly*, and *Youngblood, supra*, will be followed. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D.Cal.1990), to the extent that it applies California law, will not be followed.[7] Federal agencies involved in lawsuits in this Court are expected to follow federal law. No good reason exists why state actors in a federal question case should be accorded preferential treatment in asserting privileges, merely because the California legislature has chosen to enact a statute making it more difficult for plaintiffs to obtain police personnel files in state cases.[8]

### 2. *Federal Privilege Doctrine*

■■■■ "Federal common law recognizes a qualified privilege for official information. (Citation Omitted). Government personnel files are considered official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990).[9] In order to determine whether personnel files sought are privileged, courts must weigh potential benefits of disclosure against po-

---

**7.** The Court notes that Defendants have totally failed to comply with *Martinez* in that a protective order was entered in that case which allowed Plaintiff's counsel complete access to the documents in dispute. Only after such complete access and narrowing of the issue, did the Court become involved. See Appendix A to the *Martinez* case.

**8.** Defendants make a boilerplate objection to the Requests on the basis of Defendants right to privacy. Defendants seem to base this objection on the protections provided under California Penal Code § 832.7 and California Evidence

Code § 1040 (Stipulation 8). To the extent Defendants have not completely abandoned their privacy objection, the Court considers it as part of the privilege discussion.

**9.** The Court is aware that there will be cases where a defendant may have legitimate objections to full disclosure of his personnel file. In order to avoid discovery disputes in such cases, the parties should first attempt to agree on a protective order which is tailored to meet their concerns.

tential disadvantages; if the latter is greater, the official information privilege may bar discovery. *Id.* at 1033–34. Such balancing should be conducted on a case by case basis, determining what weight each relevant consideration deserves in the fact-specific situation that is before the Court. *Kelly, supra* 114 F.R.D. at 663.[10]

This balancing test has been moderately pre-weighted in favor of disclosure:

> Such pre-weighting is consistent with the well-established notion that because privileges operate in derogation of the truth finding process the law places the burden of proving all elements essential to invoking any privilege on the party seeking its benefits. The pre-weighting also is consistent with the related idea that privileges generally are to be narrowly construed, and that doubts about their applicability are to be resolved in favor of disclosure.

*Kelly, supra,* at 662.

### 3. *Procedure for Invoking Official Government Privilege*

 In light of the relevant considerations, the following procedural requirements discussed by the courts in *Kelly* and *Kerr* are required of those who seek to invoke the "official information" privilege in federal question cases. These requirements must be satisfied before the Court will apply any balancing test to determine discoverability of government information.

A party who receives a discovery request must, within the time permitted by rule to respond or object, serve and file an objection that invokes the official information privilege by name. *Kelly, supra,* at 669. "The party must set forth this objection separately in response to each discovery question or request that would reach material covered by the privilege." *Id.* The asserting party, as in any case where a privilege is claimed, must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege. See, e.g., *Exxon, supra,* 87 F.R.D. at 637.

 Additionally, the party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter. *Kerr, supra,* 511 F.2d at 198. The affidavit or declaration must contain:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly, supra* at 670.

"A general claim of harm to the public interest would not be sufficient to overcome the burden placed on the party seeking to shield material from disclosure." *Kelly, supra* at 672.

These requirements are necessary to provide a court with the information necessary to make a reasoned assessment of the weight of the interests against and in favor of disclosure. Additionally, this allows the plaintiff a fair opportunity to challenge the bases for the assertion of the privilege.

> Providing that opportunity is important to the court as well because in our adversary system the court looks to the opposing parties to help it probe and measure

---

**10.** *Kelly* lists factors to be considered in balancing the plaintiff's interest in disclosure

against the government's interest in confidentiality.

the strength of submissions such as these. *Kelly, supra* at 670.

■ Once these objections are received, the requesting party is then required to make a good faith showing as to whether the asserted privilege should be sustained. *Kelly, supra* at 670. If that party should determine access to the information is outweighed by the state's necessity of confidentiality, then pursuit of such documents should cease. *Id.* If the requesting party determines, however, that the privilege should not be sustained, then he must confer with counsel for the agency and explain the bases for his conclusion and try to reach an agreement. *Id.* At this point, the parties could avoid the hassle of a discovery dispute with a well tailored protective order. Such protective orders are customarily entered into by stipulation of the parties in cases involving highly sensitive trade secrets, etc. No compelling reason has been advanced as to why such a device is unsuitable for use by the parties to a civil rights case.

■ Only after the party asserting the privilege has satisfied these criteria, and in the absence of agreement, should the parties resort to the Court for resolution. Plaintiff's portion of the joint stipulation required by the Local Rules should:

> [B]e accompanied by a memorandum and, if appropriate, an affidavit, (1) describing how, in the particular situation at bar, the requested information is relevant to the litigation or is reasonably calculated to lead to discovery of admissible evidence, (2) identifying interests of plaintiff's that would be harmed if the material were not disclosed, and (3) specifying how that harm would occur and how extensive it would be. Although not required, plaintiff's submissions would be more effective if they also discussed why it would be impossible or impracticable to acquire information of equivalent value through alternative means. *Kelly, supra* at 671.

■ On the basis of the papers submitted by plaintiff and by defendant in connection with his assertion of privilege, the Court will determine whether defendant's submissions are sufficient to meet the threshold burden. *Kelly, supra* at 671. If the Court finds that such submissions are insufficient, it will order disclosure of the requested documents. *Id.* In other words, should the threshold requirements not appear in the papers, the privilege assertion will be overruled in its entirety and complete disclosure will be ordered. No *in camera* inspection will occur. This procedure is essential since the Court is ill-equipped to make any intelligent decisions as to discoverability during an *in camera* inspection when it has insufficient information from the resisting party as to why disclosure should not be permitted. On the other hand, should the Court determine that defendant's submissions meet the threshold burden, an *in camera* inspection will occur as to the disputed documents. *Id.*

### 4. *Application to the Facts of the Present Case*

With these considerations in mind, this Court must determine whether Defendants have met the threshold burden.

■ Defendants raise general "harm to the public interest" objections covering the documents sought through Requests Nos. 3, 5, 9, 13, 18. Defendants further claim, through the declaration of Michael Kinsman, that the police department's internal investigatory system would be harmed by the disclosure of these Requests. Defendants, however, do not specifically describe how disclosure of the requested information *in this case* would be harmful. As noted earlier, a general claim of harm is insufficient to overcome the burden placed on the party resisting disclosure. In particular, Defendants have failed to describe how disclosure under a tailored protective order would harm a significant government interest and how much harm would be done to those interests by disclosure in this particular case. *Kelly, supra* at 670.

Defendants have not met their threshold burden and, therefore, Defendants' objec-

tions to Requests Nos. 3, 5, 9, 13 and 18 are overruled.

## B. ATTORNEY–CLIENT PRIVILEGE

Defendants next contend that Requests Nos. 1, 3, 5, 7, and 9 are protected by the attorney-client privilege.

 The attorney-client privilege protects: "(1) communications (2) made in confidence (3) by the client (4) in the course of seeking legal advice (5) from a lawyer in his capacity as such, and applies only (6) when invoked by the client and (7) not waived." *United States v. Abrahams,* 905 F.2d 1276, 1283 (9th Cir.1990). The burden of demonstrating the existence of the attorney-client privilege clearly rests on the party asserting the privilege. *Id.* at 1283. "This privilege is to be strictly construed." *United States v. Plache,* 913 F.2d 1375, 1379 (9th Cir.1990).

 To properly claim attorney-client privilege, the claimant must specifically designate and describe the documents claimed to be within the scope of the privilege and to be reasonably precise in stating the reasons for preserving their confidentiality. *United States v. Osborn,* 561 F.2d 1334, 1339 (9th Cir.1977). Objections, in such boilerplate terms as those stated by Defendants, are improper and therefore "no claim of privilege at all." *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 94 (D.Del.1974). It is not uncommon for courts to require parties asserting privilege claims to create indexes identifying the privileged documents and specifying the basis for the privilege. *American Telephone and Telegraph Company, supra,* 86 F.R.D. at 603; *United States v. Exxon Corp., supra,* 87 F.R.D. at 637 (requiring index setting forth elements of privilege claims). Based on these cases, experience has demonstrated that the following list of items are sufficient to sustain the burden of asserting the attorney-client privilege:

1. Date of document;

2. Author;

3. Primary addressee;

4. Secondary addressee(s); persons copied and recipient (and the relationship of that person(s) to the client and/or author of the document);

5. Type of document (e.g., internal memo, letter with enclosures, draft affidavit, etc.);

6. Client (i.e., party asserting privilege);

7. Attorneys;

8. Subject matter of document or privileged communication;

9. Purpose of document or privileged communication (i.e., legal claim for privilege); and

10. Whether the document or communication is work product or attorney-client privilege.

In this case, Defendants have failed to sustain their burden of demonstrating the existence of an attorney-client privilege. In particular, Defendants have failed to specifically designate or describe any of the documents claimed to be within the scope of the privilege or the reasons for preserving confidentiality. Thus, Defendants' objections to Requests Nos. 1, 3, 5, 7 and 9 are overruled.

## C. PSYCHOTHERAPIST–CLIENT PRIVILEGE

 Defendants contend that Request No. 15 seeks information protected by the psychotherapist-client privilege.

The Ninth Circuit recognizes the psychotherapist-patient privilege. *Smith v. McCormick,* 914 F.2d 1153, 1160 (9th Cir. 1990). Defendants, however, have not sustained their burden of establishing that the documents, if any, requested *in this case* are privileged (See *United States v. Talley,* 790 F.2d 1468, 1470 (9th Cir.1986).) Defendants have failed to present any information indicating that the requested documents have been kept confidential. In fact, Defendants have presented no information upon which Plaintiffs may challenge the privilege asserted. Thus, Defendants objection to Request No. 15 is overruled.

## D. WORK PRODUCT DOCTRINE

Defendants claim that Requests Nos. 1, 3, 5, 7, and 9 are protected by the work product rule.

 "The work product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir.1989). The rule protects work product which reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. F.R.Civ.P. 26(b)(3). However, work product materials may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship. *Id.*

 The police department's internal affairs section, which investigates tort claims, including investigation of claims involving police officer misconduct "was established for the purpose of conducting complete, objective investigations and for making fair, impartial evaluations of complaints against police department personnel" (Stipulation 42). The Citizen Complaint Procedure (as outlined at Stipulation 41–44) makes clear that investigations are conducted as a way to ensure proper employee conduct and that claims against police department personnel are meritless (Stipulation 41–44). Citizen complaints are investigated by Internal Affairs regardless of whether litigation is anticipated. It is done in the regular course of business (Stipulation 41–44).[11]

Documents prepared in the regular course of business do not fall under "work product" and thus are not immune from discovery. *Exxon, supra* at 638–39. Defendants have not shown otherwise by their general assertions of this privilege. Therefore, Defendants' objections on grounds of work product to Requests Nos. 1, 3, 5, 7, and 9 are overruled.

## CONCLUSION

The documents sought in Requests Nos. 3, 5, 7, 9, 13, 15, 17, and 18, to the extent set forth above, are relevant and discoverable. Defendants have not met their burden of establishing that these documents are privileged.

Therefore, to the extent the objections are overruled, Defendants are ordered to provide Plaintiffs access to the documents described in Requests Nos. 1, 3, 5, 7, 9, 13, 15, 17, and 18 within 20 days of the entry of this Order.

## ATTORNEY FEES

 Plaintiff seeks attorney fees under Fed.R.Civ.P. 37(a)(4). As Defendants' objections to Requests Nos. 3 (in part), 4, 5 (in part) and 16 were sustained, Plaintiffs are entitled to only a portion of the requested $2,400.00 amount. The Court makes this finding for the reason that Defendants' objections, to the extent they were overruled, are without substantial justification. This Court finds that the amount of $1,500.00 is reasonable.

Therefore, Defendants are ordered to pay Plaintiffs a total of $1,500.00. Payment shall be made within 10 days of the entry of this Order.

## APPENDIX A

### REQUEST FOR PRODUCTION NO. 1

The entire San Bernardino City Police Department internal investigation file into the plaintiff's government tort claim related to the incident alleged in plaintiff's Complaint, including all memoranda, notes, writings, tape recordings, photographs, charts, diagrams, transcripts and physical evidence relating to the incident.

---

**11.** In fact, Internal Affairs is directly responsible to the Assistant Chief of Police and not to the City Attorney (Stipulation 42).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1

Objection. This request calls for attorney work-product and documents protected by attorney-client privilege. The CITY OF SAN BERNARDINO did not conduct a separate investigation of plaintiff's tort claim apart from the complaints that were filed with the Police Department by Plaintiff, DAN MILLER, and his mother, Rose Miller. This request will thus be treated as identical to Request No. 18 and responded to under Request No. 18.

## REQUEST FOR PRODUCTION NO. 3

All personnel complaints made against defendants, PANCUCCI, PRITCHETT, and LUCAS alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention, for the five years preceding the date of the incident alleged in complaint to the present time.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3

Objection. This request is irrelevant and not designed to lead to the discovery of admissible evidence since plaintiff's Complaint has not alleged any wrongdoing by defendants relating to racism, prejudice, fabricated probable cause, misuse of firearms or equipment, dishonesty or perjury. In addition, plaintiff, DAN MILLER, was convicted of the very crime for which he was charged and arrested thus making irrelevant any claim of false arrest and detention. This request is also over broad [sic] since it places no limitation on the types of excessive force for which information is sought. It is also irrelevant since excessive force claims are dealt with under the Fourth Amendment to the U.S. Constitution, and the test is "reasonableness." Motive thus becomes irrelevant making these records irrelevant. In addition, this request invades the rights of privacy of those parties who may have presented complaints to the City of San Bernardino.

This request also violates public policy since confidentiality is vital to the decision-making process of the CITY OF SAN BERNARDINO and/or the City of San Bernardino Police Department, and disclosure will result in substantial risk of harm to the public interest. This information is privileged under *Evidence Code*, Section 1040 and Sections 1043 through 1047, inclusive, and *Penal Code*, Section 832.7, and invades defendant's rights of privacy.

Finally, this request may call for attorney work-product and information protected by the attorney-client privilege.

## REQUEST FOR PRODUCTION NO. 4

Each internal investigation file involving Defendants PANCUCCI, PRITCHETT, or LUCAS.

## RESPONSE TO REQUEST FOR PRODUCTION OF NO. 4

Objection. This request seeks information protected by any complainants' rights to privacy. This request is irrelevant and not designed to lead to the discovery of admissible evidence since the minor plaintiffs were never touched by the officers nor charged with a crime nor arrested, and reasonableness is the only test in a case alleging excessive force, and, therefore, these records are irrelevant as to DAN MILLER since motive is not the issue. This request is also over broad [sic] as to subject matter and time.

This request also violates public policy since confidentiality is vital to the decision-making process of the CITY OF SAN BERNARDINO and/or the City of San Bernardino Police Department, and disclosure will result in substantial harm to the public interest. This information is privileged under *Evidence Code* Section 1040 and Sections 1043 through 1047, inclusive, and *Penal Code*, Section 832.7, and by defendant's rights to privacy.

Finally, this request may call for material protected by the attorney-client privilege and also may be attorney work-product.

## REQUEST FOR PRODUCTION NO. 5

Each Government Tort claim filed with defendant City OF SAN BERNARDINO in which Defendants, PANCUCCI, PRITCHETT, or LUCAS are identified, or came to be identified, as the responsible employee.

You may limit your responses to this request to claims for false arrest, civil rights violations, assault and battery, brutality, intentional infliction of emotional distress, dishonesty, corruption, perjury, fabricated probable cause, and bigotry.

RESPONSE TO REQUEST FOR PRODUCTION NO. 5

Objection. This request is irrelevant and not designed to lead to the discovery of admissible evidence since it is overbroad and requests documents for acts not alleged in plaintiffs's complaint. Again, plaintiff, DAN MILLER, was convicted of the crime for which he was arrested and charged, and this makes this request irrelevant as to false arrest. The minor plaintiffs were not arrested or physically harmed in any way, thus making this request irrelevant as to them. It is also irrelevant since excessive force claims are dealt with under the Fourth Amendment to the U.S. Constitution, and the test is reasonableness of the conduct. Motive thus becomes irrelevant making these documents irrelevant.

This request also violates public policy since confidentiality is vital to the decision-making process of the CITY OF SAN BERNARDINO and/or the City of San Bernardino Police Department, and disclosure will result in substantial harm to the public interest. This information is privileged under *Evidence Code* Section 1040 and Section 1043 through 1047, inclusive, and *Penal Code*, Section 832.7, and by defendants' rights to privacy.

Finally, this request may call for material protected by the attorney-client privilege and also may be attorney work-product.

REQUEST FOR PRODUCTION NO. 7

Any and all witness statements associated with the incident.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7

Objection. This request calls for attorney work product. The only statements other than those in the Police Report are by the police officers. These statements were obtained during the Internal Affairs investigation in anticipation of litigation and are attorney work-product. Notwithstanding these objections, defendant will provide a copy of the Police Report and tape recording made at the time of the incident in question.

REQUEST FOR PRODUCTION NO. 9

Any and all memoranda or correspondence about the incident and between superior officers and defendants, PANCUCCI, PRITCHETT or LUCAS, or between defendants PANCUCCI, PRITCHETT and/or LUCAS only.

RESPONSE TO REQUEST FOR PRODUCTION NO. 9

Objection. These documents are irrelevant and not designed to lead to the discovery of admissible evidence. These documents also contain attorney work-product since there are statements prepared in anticipation of litigation. This request also violates public policy since confidentiality is vital to the decision-making process of the CITY OF SAN BERNARDINO and/or the City of San Bernardino Police Department, and disclosure will result in substantial harm to the public interest.

REQUEST FOR PRODUCTION NO. 13

Training records for Defendants PANCUCCI, PRITCHETT, and LUCAS.

RESPONSE TO REQUEST FOR PRODUCTION NO. 13

Objection. This request is irrelevant and not designated to lead to the discovery of admissible evidence. This information is also privileged under Evidence Code, Section 1040 and Sections 1043 through 1047, inclusive, and *Penal Code*, Section 832.7, and invades the defendants' rights of privacy.

REQUEST FOR PRODUCTION NO. 15

Psychiatric-psychological records of defendants, PANCUCCI, PRITCHETT and LUCAS.

RESPONSE TO REQUEST FOR PRODUCTION NO. 15

Objection. This request is irrelevant and not designed to lead to the discovery of admissible evidence. This information is also privileged under *Evidence Code*, Sec-

tion 1040 and Sections 1043 through 1047, inclusive, and *Penal Code*, Section 832.7, and invades the defendants' rights of privacy. This request also seeks documents privileged under the psychotherapist-patient and physician-patient privilege.

## REQUEST FOR PRODUCTION NO. 16

Performance evaluations of defendants PANCUCCI, PRITCHETT, and LUCAS.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16

Objection. This request is irrelevant and not designed to lead to the discovery of admissible evidence. This information is also privileged under *Evidence Code*, Section 1040 and Sections 1043 through 1047, inclusive, and *Penal Code*, Section 832.7, and invades the defendant's rights of privacy. This request is also over broad [sic] since defendants are evaluated in all areas of their performance which certainly includes areas bearing no relationship at all to this incident.

## REQUEST FOR PRODUCTION NO. 17

Each entry into any Automated Event Index or similar source in which Defendants PANCUCCI, PRITCHETT or LUCAS are identified as having been the victims of any *California Penal Code*, Section 69, 148, 217, 242, 243, 245, or 415.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17

Objection. This request is irrelevant and not designed to lead to the discovery of admissible evidence since DAN MILLER was convicted of the offense for which he was charged, and the minor plaintiffs were never harmed, charged with a crime or arrested.

## REQUEST FOR PRODUCTION NO. 18

The entire San Bernardino Police Department Internal Investigation Bureau file into the plaintiff's personnel complaint relating to the incident alleged in plaintiff's Complaint, including all memoranda, note, writings, tape recordings, photographs, charts, diagrams, transcripts and physical evidence relating to the incident.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18

The Internal Affairs investigation file consists of four types of documents:

1. The Police Report of this Incident;

2. Statements by the officers at the scene;

3. Complaints by DAN MILLER and Rose Miller; and,

4. Correspondence between the officers and their superiors and vice versa. Some of this correspondence is included under Category 2 (Statements).

Defendant[s'] response will be segregated by these four categories.

1. The CITY will provide a copy of the Police Report.

2. The CITY objects that these statements were obtained from the officers present at the incident by order of their superior officers in anticipation of litigation, and thus are attorney workproduct. There are other means available for plaintiffs to discover the officer's version of the events which are also contained in the Police Report, such as taking the officer's depositions.

3. The CITY will provide copies of the complaints by DAN and Rose MILLER.

4. The CITY objects to this portion of the request on the grounds that it is irrelevant and not designed to lead to the discovery of admissible evidence. This request violates public policy since confidentiality is vital to the decision-making process of the CITY of San Bernardino Police Department, and disclosure will result in substantial harm to the public interest.