**JAPAN HALON CO., LTD., Plaintiff,**

v.

**GREAT LAKES CHEMICAL
CORPORATION and Yuichi
Iikubo, Defendants.**

**No. 4:90cv37AS.**

United States District Court,
N.D. Indiana,
Hammond Division.

May 28, 1993.

John R. VanWinkle, Bingham Summers
Welsh and Spilman, Indianapolis, IN, Matthew D. Powers, Jared Bobrow, Weil Gotshal
and Manges, Menlo Park, CA, for Japan
Halon Co., Ltd.

John C. Duffey, James V. McGlone, Stuart
and Branigin, Lafayette, IN, for Great Lakes
Chemical Corp.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, Chief Judge.

Japan Halon filed its complaint for misappropriation of trade secrets against Great
Lakes in the Central District of California on
February 22, 1990. Following a transfer of
venue to the Northern District of Indiana,
Great Lakes filed its answer and counterclaim. Japan Halon has amended its complaint to include Yuichi Iikubo as a defendant. Great Lakes has filed a motion to
compel discovery of unprivileged documents
from Onoda Cement and Tosoh, Japan Halon's parent companies.

### *Analysis*

The issue before the court is whether
Japan Halon has "possession, custody or control" over the documents in question. Fed.
R.Civ.P. 34 delineates the scope of production of documents between parties.[1] In this

---

**1.** (a) Any party may serve on any other party a    request (1) to produce and permit the party mak-

case, the defendants have requested that documents be produced, or at least their existence or nonexistence be confirmed, by nonparties, Onoda Cement and Tosoh. Rule 34 only applies to discovery between parties, but it "does not prevent discovery of the kind permitted by the rule against one who is not a party" (Charles A. Wright & Arthur R. Miller, 8 *Federal Practice and Procedure* § 2208 (1970). Great Lakes bases its argument for production on Japan Halon's alleged custody or control over documents in the possession of its parent companies, which would give the plaintiff the legal right to copies of documents. Japan Halon, however, has declared that it does not have the requisite control over the documents because "Japanese law makes clear that Japan Halon has no right to broadly demand internal documents from Onoda and Tosoh" (Memorandum of Japan Halon in Opposition to Great Lakes' Motion ["Japan Halon Memorandum"] at 2). Thus, Japan Halon has argued that international interpretation of its corporate structure and the Japanese discovery law result in the conclusion that its does not have the requisite control over documents in possession of its parent companies. In response to Japan Halon's declaration that Japanese law does not permit compliance with Great Lakes' discovery request, the defendants have argued that "[h]aving chosen to bring its lawsuit in the U.S. federal courts, Japan Halon is required to conduct discovery within the letter and the spirit of the Federal Rules of Civil Procedure" (Defendant's Memorandum in Support of Motion to Compel Discovery ["Defendants' Memorandum"] at 3).

■ Conversely, Japan Halon has argued that the Federal Rules of Civil Procedure cannot be applied in this case until Great Lakes has pursued its discovery request through the "traditional letters rogatory procedures prescribed by Japan's Reciprocal Judicial Assistance Act" through consular channels (Japan Halon's Memorandum at 3). The defendants claim that this course of action

would be futile, and that Rule 34 is applicable:

"It is generally understood that a Japanese court, acting as a commissioned or assigned judge as defined by the Code of Civil Procedure, *cannot issue an order to produce documents or other tangible* evidence in executing *letters rogatory* from a foreign court. Thus, the only assistance generally given by Japanese courts is the taking of testimony of witnesses, expert witnesses and the parties."

Defendants' Memorandum at 18, quoting 7 Kitagawa, *Doing Business is Japan* § 5.05[5][d] (M.B.1992 ed.) (emphasis added). This court finds that the defendants are not required to take the path of letters rogatory prior to filing their motion to compel discovery pursuant to Fed.R.Civ.P. 34. The court also agrees with the defendants that because Japan is not a signatory to the Hague Convention on Evidence, any analysis of case law on that point is rendered moot (Defendant's Reply in Support of Motion to Compel ["Defendant's Reply"] at 2).

■ The analysis of document production under the Federal Rules of Civil Procedure is subject to a broad approach, as the "rule is to be liberally, rather than narrowly, construed, and its provisions have the force and effect of a statute" 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2202 (1970). Great Lakes bases its discovery request on the relationship between Japan Halon and its parent corporations:

Defendants believe—and Japan Halon does not deny—that its "parent companies" namely Onoda Cement Co., Ltd. and Tosoh are in physical possession of documents which are 1) reasonably calculated to lead to the discovery of admissible evidence, and 2) responsive to one or more of the Defendants' requests for discovery.

Defendants' Memorandum in Support at 4. Further, Great Lakes argues that the close nature of the three corporate entities supports the conclusions that the documents are within the "possession, custody and control"

---

ing the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents ... which are in the possession, custody or control of the party upon whom the request is served ... Fed.R.Civ.P. 34(a).

meaning of Fed.R.Civ.P. 34(a), even though they are in the possession of nonparties:

"A party may be required to produce documents and things that he possesses even though they belong to a third person who is not a party to the action. And if a party has possession, custody or control, he must produce documents and things even though the documents and things are themselves beyond the jurisdiction of the court."

Defendants' Memorandum in Support at 4–5, quoting 8 Charles A. Wright & Arthur R. Miller, 8 *Federal Practice and Procedure* § 2210 (1970).

The defendants also cite *Afros S.P.A. v. Krauss–Maffei Corp.*, 113 F.R.D. 127, 129 (D.Del.1986), which defines control: "The control analysis for Rule 34 purposes does not require the party to have actual managerial power over the foreign corporation, but rather that there be close coordination between them." *Afros S.P.A.* based its analysis on the test applied in *In Re Uranium Antitrust Litigation,* 480 F.Supp. 1138 (N.D.Ill. 1979), in which the court held that:

It is sufficient that Rio U.S. has, or once had, control over its directors, officers and employees who managed the uranium-related activities of Rio U.S. alone or of both corporations. Rio U.S. must produce all responsive documents held by those employees or former employees, even if those documents have found their way into Rio Canada files. The formalities separating the two corporations cannot be used as a screen to disguise the coordinated nature of their uranium enterprise.

*In Re Uranium,* 480 F.Supp. at 1153.

█ The same analysis applies to this case. As an alternative to its position that Great Lakes should be forced to pursue international letters rogatory through consular routes with a dim chance of success, Japan Halon advances the argument that the Japanese practice of "secondment" should prevent discovery from its parent companies:

Japan Halon's board of directors includes four full-time directors and four part-time directors. *See* Haga Decl. § 5. The four full-time directors are charged with primary responsibility for conducting and directing the business activities of Japan Halon. *Id.* Each of these directors is seconded from Onoda or Tosoh and, during the period of the secondment, performs no duties or responsibilities for Tosoh or Onoda. *Id.* §§ 6–7. The effect of these secondments is that each of Japan Halon's full-time directors is subject to the command and control of Japan Halon, not Tosoh or Onoda. This is because Tosoh and Onoda gave up their right to command and control the seconded employees during the period of the secondment. Bobrow Decl., Exh. C. Thus, Japan Halon's full-time directors do not "overlap" with Tosoh or Onoda because the full-time directors are subject only to the command and control of Japan Halon.

Secondment makes Japan Halon's board of directors structure completely distinguishable from the structure at issue in *Afros S.P.A.,* the case relied on by Great Lakes.

Japan Halon Memorandum at 9. This hypertechnical argument is precisely the type that is considered obstructionist in violation of the letter and of the spirit of Fed.R.Civ.P. 34. The defendants have cited, for five pages, deposition testimony that evidences extreme closeness of Japan Halon and its parent corporations (Defendants' Memorandum in Support at 7–12). Despite what its connection is called in Japan, the relationship between the parent corporations and Japan Halon is sufficiently close to justify enforcing a discovery request. In keeping with the test for control in *In Re Uranium Antitrust litigation,* 480 F.Supp. 1138, 1153, the term "secondment" "cannot be used as a screen to disguise the coordinated nature" of the companies, in an attempt to evade discovery relevant to the lawsuit brought by Japan Halon.

Japan Halon further advances the position that the parent companies do not stand to benefit from this lawsuit, although the two corporations hold all the stock in Japan Halon (Japan Halon Memorandum at 12–14). This court does not agree that because neither parent corporation owns a majority of the shares, neither will benefit. The court is also not convinced that because any award

would go to Japan Halon, its parent corporations would not benefit directly enough to warrant any production of documents on their behalf.

The tactics of some counsel in this case have the distinct odor of an effort to prolong the discovery disputes so as to undermine the trial date in this case. Such will not be tolerated and the trial date is firm. The Civil Justice Reform Act, 28 U.S.C. § 1471 *et seq.*, and this district's plan thereunder places heavy burdens on the judges of this court to give prompt attention to civil cases. This court has every intention of doing precisely what the Congress has demanded of the Federal trial judiciary and will tolerate no effort to improperly undermine same.

Counsel in this case must understand that it is the practice of this court to require during the period of discovery all witnesses including expert witnesses who are to be called at trial to be disclosed. Failure to disclose such witnesses so that they may be deposed during the discovery period will generally foreclose those witnesses testifying at trial. This court also encourages the presentation of expert testimony on video tape deposition, understanding that a written transcript must accompany the same. Those depositions also must be completed during the open discovery period.

In terms of worldwide macroeconomics, it may well be argued that there are many characteristics of the current Japanese economy which are admirable and which should be adopted in this nation. One may well argue, for example, that the excessive number of lawyers in the United States represent a drain on its economy. Japan currently has very few lawyers in its society. However, it is unlikely that the legal system in the United States in this regard is likely to change in any significant way in the immediate future given the social and political values of those who currently hold the levers of power in this nation. Whatever the faults of the legal system of the United States may be, and there are many, foreign corporations who do business in this nation must be bound by our laws and legal system. It is not the primary responsibility of this court to bring about social and economic change in the nation. It is the obligation of this court to fairly and evenhandedly enforce the laws of this nation to all concerned including, where appropriate, foreign corporations. This court does not conceive that it here has an obligation to wade deeply into Japanese domestic law and any invitation to do so is now most respectfully declined. The corporate entities before this court are doing business in this nation and the jurisdictional basis of this court is based on that fact under 28 U.S.C. § 1332. In fact, a Japanese corporation has invoked that jurisdiction of this court, and therefore is subject to the appropriate laws that apply here.

In looking through the elaborate discovery paper chase present in this record, there is every appearance that this plaintiff who chose to invoke the jurisdiction of the United States courts is engaged in a species of international hide and seek. Such a game is unwise and can become very expensive under the sanction provisions of both Fed.R.Civ.P. 16 and Fed.R.Civ.P. 37, aside from any reference to Fed.R.Civ.P. 11. Further, the Supreme Court of the United States has now submitted to the Congress a far-reaching amendment to Fed.R.Civ.P. 26 which would greatly expand the scope of discovery. It also provides for voluntary disclosures by parties and sanctions for failure to comply. Under the Civil Justice Reform Act, 28 U.S.C. 1471 *et seq.*, and the plans and orders thereunder this court has provided for expansive discovery in civil cases. The direction of the law is clear and the rule is for expansive discovery and those who oppose same carry heavy burdens and risk heavy sanctions. The new legal order requires a change in attitudes and practices born in an earlier era. The opposition to discovery in this case smacks of an earlier now outdated mentality.

The defendants' motion to compel discovery is **GRANTED. IT IS SO ORDERED.**