Jose Maria SOTO, Jr., Plaintiff,

v.

CITY OF CONCORD, et al., Defendants.

No. C 94–02907 CW (MEJ).

United States District Court,
N.D. California.

July 17, 1995.

Jeff Cunan, Taylor & Cunan, Walnut Creek, CA.

Louis A. Leone, Stubbs, Hittig & Leone, San Francisco, CA.

## ORDER RE: PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND REQUEST FOR SANCTIONS

JAMES, United States Magistrate Judge.

Before the Court is Plaintiff's motion to compel production of documents and motion for sanctions. After careful consideration of the papers, arguments of counsel, and good cause appearing therefor, Plaintiff's motion to compel is GRANTED, subject to an *in camera* review of certain requested documents. Plaintiff's motion for sanctions is DENIED, for the reasons set forth below.

### I. BACKGROUND

This is a civil rights action brought under 42 U.S.C. § 1983 against the City of Concord Police Department and certain of its police officers for an alleged violation of Plaintiff's rights under the United States Constitution.[1] Plaintiff alleges that members of the Con-

---

**1.** Plaintiff originally filed his Complaint for Damages in California Superior Court, stating causes of action in Unreasonable Force in Effecting Arrest, Assault, Battery, Battery Committed By Unlawful Arrest, False Imprisonment, Intentional Infliction of Emotional Distress, Negligent In-

fliction of Emotional Distress, Invasion of Privacy, Negligence, and Negligence Per Se. On August 16, 1994, Defendants removed the action to the Federal District Court, pursuant to 28 U.S.C. § 1441(b).

cord Police Department, including Officer Leftwich, Corporal Mort, and Sergeant Norvell used excessive force while arresting him at his home on February 28, 1993 for outstanding misdemeanor and traffic warrants.

This case is now in the discovery stage and Plaintiff seeks an order from this Court compelling Defendants to produce certain documents. The documents sought by Plaintiff in the instant motion include police department internal affairs records, the officer-defendants' personnel files, psychological and physical health records of the officer-defendants,' citizen complaints, and police guidelines, directives, and policy statements.

Plaintiff propounded his first Request for Production of Documents and Things pursuant to Federal Rules of Civil Procedure 34 on or about January 4, 1995. On January 31, 1995, Defendants served a Response to Plaintiff's request in which they objected to each request generally. Plaintiff sent a subsequent request on March 2, 1995. On March 31, 1995 the defendants again refused to produce any of the requested items, asserting a number of privileges and objections based on state law. Plaintiff then filed this motion to compel document production on April 12, 1995.

■ At the May 16, 1995 hearing to consider Plaintiff's motion to compel produc-

tion of documents, this Court issued an order finding that as a threshold matter, California statutory privileges would not apply in this case and that privileges would be determined under federal common law.[2]

## II. DISCUSSION

### A. *Motion to Compel Introduction*

The instant motion arises under Federal Rule of Civil Procedure 37(a), which authorizes a party to apply for an order to compel disclosure or discovery. "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R.Civ.P. 37(a)(2)(A). When a party withholds information that is otherwise discoverable under the Federal Rules by claiming a privilege, as Defendants have done in this case, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). Pursuant to Northern District of California Local Rule 230–5, "[w]henever a claim of privilege is made with respect to a communication or

---

**2.** This Court determined that "[i]n federal question cases, privileges are determined under federal common law. Fed.R.Evid. 501; *United States v. Zolin,* 491 U.S. 554, 562, 109 S.Ct. 2619, 2625–26, 105 L.Ed.2d 469 (1989); *Garrett v. City & County of San Francisco,* 818 F.2d 1515, 1519 n. 6 (9th Cir.1987). In ascertaining federal common law, the Court may "borrow" applicable law not inconsistent with federal principles. *Pagano v. Oroville Hosp.,* 145 F.R.D. 683, 685 (E.D.Cal.1993). The California statutory privileges cited by Defendants are inconsistent with federal privileges outlined in *Kerr v. United States Dist. Court for North. Dist.,* 511 F.2d 192 (9th Cir.1975); *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal.1987); and *Youngblood v. Gates,* 112 F.R.D. 342 (C.D.Cal.1985)."

The federal policy on discovery is a liberal standard, and applying California privilege law, such as California Evidence Code § 1043 and Penal Code § 832.5 would severely limit Plaintiff from gaining access to the police files in dispute. *See Miller v. Pancucci,* 141 F.R.D. 292, 298

(C.D.Cal.1992). Under California Evidence Code § 1043, the requesting party must make a showing of materiality, which is not required under federal law and is expressly rejected in Federal Rule of Evidence 402, which states that materiality should have no part in construing the Federal Rules. In addition, under California Evidence Code section 1043, the burden of overcoming the assertion of a privilege is placed on the party requesting discovery, whereas under federal law, the burden of resisting discovery is on the party opposing discovery. *Id.* at 299 (citing *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.1975)). Finally, under California law, the requesting party must come forward with affidavits showing good cause for the disclosure, whereas in federal privilege cases, the party resisting discovery has the burden of specifically identifying the disputed records so the requesting party has an opportunity to challenge the assertion of the privilege. *Miller v. Pancucci,* 141 F.R.D. at 299.

other item, it shall be specifically identified and the grounds for the claim stated." Defendants have raised many such objections and claims of privilege in their opposition to Plaintiff's motion to compel documents.

Each of Plaintiff's requests, along with Defendants' corresponding objections and claims of privilege, are analyzed below according to the type of document requested, which include: (1) internal affairs documents; (2) personnel files; (3) psychological and physical health records; (4) citizen complaints; and (5) police guidelines, directives, and policy statements.

### 1. Internal Affairs Documents (Request 1)

In his motion to compel production of documents, Plaintiff requests the Court to compel production of any and all documents that concern or are relevant to the incident described in the Complaint, including those documents that concern the entry and search of Plaintiff's residence; police internal affairs investigations relating to the incident; statements or interviews of witnesses, informants, Plaintiff, and any police officers who had any role or contact with the case; incident reports; and tapes and transcripts of radio messages made concerning the incident and all reports of such radio messages.

Defendants have agreed to produce the documents concerning the entry and search of Plaintiff's residence, all incident reports, and all tapes and transcripts of radio messages made concerning the incident. Defendants object to both the request for internal affairs investigations and request for statements of witnesses and police officers on the following grounds:

#### *Relevancy and Overbreadth*

Defendants assert that the request is not relevant to any issues in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further assert that the request is overbroad as to time, subject matter and officers, in that the request includes investigations which do not

involve complaints against the officers named in this action and does not seek complaints regarding investigations with respect to use of excessive force in arrests by the named officers.

Under the Federal Rules of Civil Procedure, the parties may obtain discovery regarding any matter that is (1) "not privileged" and (2) "relevant to the subject matter involved in the pending action." Fed. R.Civ.P. 26(b)(1). Furthermore, "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The scope of discovery under the Federal Rules is extremely broad. A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Because discovery is designed to define and clarify the issues, it is not limited to only those specific issues raised in the pleadings. *Miller v. Pancucci,* 141 F.R.D. 292, 296 (C.D.Cal.1992) (citing *Oppenheimer,* 437 U.S. at 351, 98 S.Ct. at 2389–90). Rather, the question of relevancy should be construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case. *Miller,* 141 F.R.D. at 296.

Although in general the party seeking to compel discovery bears the burden of showing that his request satisfies the relevance requirement of Rule 26, the court in *Kelly v. City of San Jose,* 114 F.R.D. 653, 667–68 (N.D.Cal.1987), concluded that in the context of civil rights excessive force cases against police departments, plaintiffs may suffer great difficulties if courts impose demanding relevancy standards on them. Because it is unlikely that such a plaintiff would know the contents of confidential police files, the court suggests that it should be "sufficient for a plaintiff to show how information of the *kind* that is likely to be in the files could lead to admissible evidence." *Id.* at 667–68. The court reasons:

It does not seem fair ... to demand that a plaintiff identify with particularity the information that is in confidential police files and demonstrate specifically how that information is relevant to his claims. [A] judge should resolve doubts about relevance in favor of disclosure, in part because she is not likely to understand the case as well as plaintiff's counsel, and thus is not likely to be able to foresee all the ways he might be able to use the information, and in part because the standard set forth in Rule 26 is so broad.

*Id.* at 668.

■ This Court finds the *Kelly* court's reasoning to be persuasive and will follow its reasoning when determining the relevancy of Plaintiff's discovery requests. Plaintiff's request for the internal affairs documents concerning the investigation of the specific incident described in the complaint is relevant and is not overbroad. Information contained in these documents include complaints of excessive force, the names of officers involved, witnesses identified, as well as findings and conclusions. Such evidence is relevant and would likely lead to the discovery of admissible evidence in this case. The request for internal investigation documents is not overbroad as to subject matter or time, because Plaintiff is requesting only those documents that concern the specific incident in the complaint.

■ Similarly, statements and interviews of persons having a role in or contact with this case are relevant. Plaintiff need not identify with particularity each officer whose statements might be used. Furthermore, the internal affairs histories and statements of *any* police officers on the scene are relevant, regardless of whether or not those officers are named parties to the action. *Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D.Cal.1993); *see Miller*, 141 F.R.D. 292, 296 (finding that internal investigation documents and statements by officers at the scene of the alleged incident were relevant to a claim under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978)). Thus, the request for officer and witness statements is neither irrelevant nor overbroad.

### Self-critical analysis/deliberative process privilege

Defendants claim that the requested documents are privileged under the self-critical analysis privilege. The self-critical analysis privilege has been used in some federal courts to shield from discovery internal safety reviews in which companies evaluate the causes of accidents in which they are involved. *Bradley v. Melroe Co.*, 141 F.R.D. 1, 3 (D.C.Cir.1992). Courts which recognize this privilege have concluded that requiring production of such documents "would tend to hamper honest, candid, self-evaluation geared toward the prevention of future accidents." *Granger v. National R.R. Passenger Corp.*, 116 F.R.D. 507, 510 (E.D.Pa.1987). However, neither the Ninth Circuit nor the Supreme Court has recognized the self-critical analysis privilege. "The Supreme Court and circuit courts have neither definitively denied the existence of such a privilege, nor accepted it and defined its scope." *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 425, n. 1 (9th Cir.1992).

Some district courts that have recognized this privilege have held that the self-critical analysis privilege should not be applied to police personnel files and records of internal affairs investigations in civil rights suits against police officers. *Kelly v. City of San Jose*, 114 F.R.D. at 664–66; *see also King v. Conde*, 121 F.R.D. 180 (E.D.N.Y.1988) (endorsing use of *Kelly* approach to the official information privilege while rejecting use of the self-critical analysis privilege in case of alleged police brutality). Yet, Defendants contend that the self-critical analysis privilege applies, claiming that if internal investigatory documents were revealed, frank discussion and evaluation within their police department would be hampered.

Defendants rely heavily on *Skibo v. City of New York*, 109 F.R.D. 58 (E.D.N.Y.1985), and *Kott v. Perini*, 283 F.Supp. 1 (N.D.Ohio

1968), for the proposition that the self-critical analysis privilege applies in this case. However, these cases have been heavily criticized and do not support Defendants' position.

In *Skibo,* the court applied the self-critical analysis privilege to the plaintiff's request for certain internal police evaluations and other documents relating to incidents of excessive force by a police department. 109 F.R.D. at 63. The *Skibo* court ultimately held that the privilege would not shield the documents from discovery because the police's interest in maintaining secrecy did not outweigh the plaintiff's (and general public's) need for the information. *Id.* at 64. Similarly, in the case at bar, the defendants' interest in keeping the internal affairs investigations secret and confidential to encourage "frank discussion" does not outweigh Plaintiff's need for the information.

The court in *Kott* recognized an absolute privilege for police records based on "policy concerns for denying public access." 283 F.Supp. at 2. The court rejected a case-by-case balancing approach and allowed a police department to shield its confidential records and notations from discovery on the theory that "expos[ure] to outside parties would have a certain and chilling effect upon the internal use of such record making." *Id.* However, *Kott* has been severely criticized. The court in *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 n. 8 (E.D.Pa.1973) rejected *Kott*'s recognition of an absolute privilege for police records and its failure to invoke balancing, noting that the *Kott* holding is "inconsistent with the approach adopted in the Federal Rules of Evidence." It is significant to note that the opinion in *U.S. v. Mackey,* 36 F.R.D. 431 (D.D.C.1965), upon which the court in *Kott* relied in part, was overruled on this same issue three years prior to the *Kott* opinion. *Mackey v. U.S.,* 351 F.2d 794 (D.C.Cir.1965). As a result, "*Kott* cannot now be said to be persuasive." *Boyd v. Gullett,* 64 F.R.D. 169, 178 (D.Md.1974).

■ *Kelly v. City of San Jose,* 114 F.R.D. at 664, also flatly rejects the notion that police departments' internal investigations and evaluations should be protected by an almost absolute privilege, as *Kott* suggests. The court in *Kelly* debunks the theory that officers will be less truthful or forthright in expressing their opinions if there is a risk of future disclosure:

> [S]ince there is no empirical support for the contention that the possibility of disclosure would reduce the candor of officers who contribute to internal affairs investigations, and since there are solid reasons to believe that that possibility might have the opposite effect (improving accuracy and honesty), there are no justifications for offering near absolute protection to the statements that go into such reports or the opinions and recommendations that conclude them. In fact ... such material should be presumptively discoverable when a plaintiff makes a proper showing of relevance.

*Id.* at 665–66. This Court concurs with *Kelly*'s reasoning in this matter. Furthermore, the notion that police departments should be able to completely shield their internal affairs investigatory process from the public offends basic notions of openness and public confidence in our system of justice. Accordingly, the use of the self-critical analysis privilege is inappropriately invoked by Defendants to shield internal affairs investigatory documents and witness statements from discovery.

■ The "deliberative process" privilege, closely related to the self-critical analysis privilege, is also inappropriate for use in civil rights cases against police departments. The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy. *Id.* at 659 (citing *Burka v. New York City Transit Auth.* 110 F.R.D. 660 (E.D.N.Y.1986)). "So limited, this privilege would offer no protection at all to most of the kinds of information police departments routinely generate." *Kelly,* 114 F.R.D. at 659. Both the internal affairs investigations as well as the records of witness/police officer statements are of the type that would be routinely generated by

Defendants. Thus, following *Kelly*, this Court also rejects Defendants' use of the deliberative process privilege.

### Official information privilege

■ Defendants assert that the requested documents are privileged under the "official information" privilege. Federal common law recognizes a qualified privilege for official information. *Kerr v. U.S. Dist. Ct. for the Northern Dist.*, 511 F.2d 192, 198 (9th Cir.1975). In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege. *Kelly v. City of San Jose*, 114 F.R.D. at 660; *Miller v. Pancucci*, 141 F.R.D. at 300; *Hampton v. City of San Diego*, 147 F.R.D. at 230–31; *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir.1990), *cert den.*, 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991). In the context of civil rights suits against police departments, this balancing approach should be "moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 661.[3]

■ However, before the Court will engage in this balancing of interests, the party asserting the privilege (the defendant police department) must properly invoke the privilege by making a "substantial threshold showing." *Id.* at 669. In order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. *Id.* The affidavit must include: "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." *Id.* at 670. *See also Chism v. County of San Bernardino*, 159 F.R.D. 531, 533 (C.D.Cal.1994); *Hampton v. City of San Diego*, 147 F.R.D. at 230–31; *Miller v. Pancucci*, 141 F.R.D. at 301. A strong affidavit would also describe how the plaintiff could acquire information of equivalent value from other sources without undue economic burden. *Kelly*, 114 F.R.D. at 670.

■ If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents in issue. If a defendant meets the threshold requirements, the court will order an *in camera* review of the material and balance each party's interests. *Id.* at 671; *Chism*, 159 F.R.D. at 533–34; *Hampton*, 147 F.R.D. at 231; *Miller*, 141 F.R.D. at 301.[4]

■ In the instant case, Defendants have failed to meet the threshold burden

---

**3.** In adopting this pre-weighting test in favor of disclosure, the *Kelly* court determined that the policies underlying civil rights laws, public confidence in the court system, and in doing individual justice outweighed both the police department's desire for secrecy and privacy rights of officers or citizen complainants. *Id.* at 661.

**4.** If the party asserting the privilege meets the threshold requirement, the court will conduct a balancing analysis that considers, but is not limited to, the following factors: (1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will by chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case. *Kelly v. City of San Jose*, 114 F.R.D. at 663 (citing

because they have not satisfied elements three, four, and five of the *Kelly* test. Defendants (via their affiant) have asserted the general proposition that internal affairs investigatory documents and statements of police officers and/or witnesses should remain secret in order to encourage "frank discussions" for use in developing new or modified policies and procedures. However, "a general assertion that a police department's internal investigatory system would be harmed by disclosure of the documents is insufficient" to meet the threshold test for invoking the official information privilege. *Chism,* 159 F.R.D. at 534–35. "[A] general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure." *Kelly,* 114 F.R.D. at 672; *Miller,* 141 F.R.D. at 300–01. The party resisting discovery "must *specifically* describe how disclosure of the requested documents in that particular case ... would be harmful." *Chism,* 159 F.R.D. at 535 (emphasis added) (citing *Miller,* 141 F.R.D. at 300–01). This Court finds that Defendants' general claim that disclosure would harm their internal investigatory system is not sufficient to meet the third element of the threshold test for invoking the official information privilege.

Defendants also have not met the fourth requirement of the threshold test because they have failed to address how disclosure, under a carefully crafted protective order, would create a substantial risk of harm to significant government interests. The use of a carefully drafted protective order, under which only Plaintiff and his lawyer have access to the material, substantially reduces the confidentiality interests asserted by Defendants. *Kelly,* 114 F.R.D. at 662, 666, 671; *see also Chism,* 159 F.R.D. at 535 (endorsing use of protective order to keep internal use-of-force tactics secret); *Hampton,* 147 F.R.D. at 231 (endorsing use of protective order to protect privacy interests of police

officers); *Miller,* 141 F.R.D. at 301 (encouraging the use of well tailored protective orders in discovery of police files).

Finally, Defendants have failed to give a projection of how much harm would be done to those interests if disclosure occurred, the fifth element of the threshold test. As such, Defendants have not met their burden for invoking the official information privilege with regard to Request No. 1. Accordingly, this Court grants Plaintiff's request to compel discovery of the documents contained in Request 1, subject to the protective order which is attached to this opinion.

## 2. Personnel Files (Requests 3, 4, 5)

Plaintiff requests the Court to compel the production of documents that comprise or are part of the personnel files of the Defendants Officer Leftwich, Corporal Mort, and Sergeant Norvell, including the disciplinary record, and any other documents in the possession of a defendant that concern his training, duties, performance, assignments, and mental and physical condition.[5]

Defendants object to Plaintiff's Request on the following grounds:

### *Overbreadth/Relevancy*

Defendants object to producing the officers' personnel files on the basis that the request is not relevant and is overbroad. Under the relevance standard set forth above, the Court finds that many documents contained in the personnel files of Defendants Leftwich, Mort, and Norvell are relevant to the issues presented in this case and are reasonably calculated to lead to the discovery of admissible evidence. Personnel files, including records of training, conduct, performance, and evaluation of officer-defendants in excessive force cases have been held to be relevant. *Hampton,* 147 F.R.D. at 229. Such information "may be relevant on the

*Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa.1973)).

**5.** Plaintiff has previously stipulated that certain documents contained in the personnel files will

not be sought in discovery. Those documents that are sought are considered in the Court's analysis, discussed *infra.*

issues of credibility, notice to the employer, ratification by the employer and motive of the officers ... as well as on the issue of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent." *Id.*

■ The personnel files of the defendant-officers in the instant case are relevant to Plaintiff's excessive force claim. The personnel files contain employee performance appraisals which contain information on each officer's ethics, interpersonal relationships, decision making abilities, work and safety habits, and crime scene management techniques. They also contain information on promotions, training records, letters of commendation, interviews, employee orientation, and employment applications. Each of these types of documents may be quite relevant to issues involved in Plaintiff's excessive force claim, because such documents may reveal the defendant officers' patterns of behavior, as well as the City's response to such behavior.

This Court has specifically considered the personnel files of each Defendant and finds the following: As to the personnel file of Officer Leftwich, the following categories of information (found in Defendants' privilege logs) are relevant to the claims at issue in this case: employee performance appraisals (category 1), field operations division memorandum (category 3), time cards for the date(s) relating to the incident alleged in the complaint (category 4), training records (category 9), the employment application (category 13), and letters of commendation (category 14). As to the personnel file of Corporal Mort, the following categories of information are relevant to the claims at issue in this case: employee performance appraisals (category 1), certificates of promotion (category 3), memo regarding interviews (category 4), service recognition (category 9), training records (category 10), employee orientation (category 12), employment application (category 15), and letters of commendation (category 16). As to the personnel file of Sergeant Norvell, the following categories of information are relevant to the claims at issue in this case: employee performance appraisals (category 1), records of promotion (category 3), memo regarding change in assignment (category 4), employee supplemental information sheet (category 9), training records (category 10), employee orientation (category 12), employment application (category 16), letters of commendation (category 17), and written reprimands (category 18).

### Official information privilege

■ Defendants claim that the personnel files sought by Plaintiff are protected by the official information privilege. As stated above, the qualified official information privilege may be asserted by police departments to shield internal affairs documents from discovery. *Kelly v. City of San Jose*, 114 F.R.D. at 660. Government personnel files are considered "official information," thus the privilege is applicable in this case. *Miller v. Pancucci*, 141 F.R.D. at 299 (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990)). However, a general claim that the police department's internal investigatory system would be harmed by disclosure of personnel files is not sufficient to meet the *Kelly* threshold test for invoking the official information privilege. *Miller*, 141 F.R.D. at 301. The court in *Miller* allowed discovery of personnel files, including personnel complaints, training records, and internal affairs investigation files, despite defendants' general claim of harm to their internal investigatory system. *Id.* at 301–02.

Defendants cite to *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir.1990), an employment discrimination case, for the proposition that the official information privilege should bar discovery of their personnel files. The *Sanchez* court, after balancing the competing interests involved, determined that the confidentiality interests of individual employees outweighed plaintiff's interest in conducting a general search of personnel files. A crucial distinction can be drawn between *Sanchez* and the case at bar. The plaintiffs in *Sanchez* had access to the same statistical information which they sought

from defendants' personnel files—the data involved in that case was readily available from a governmental agency. *Id.* at 1034. In the case at bar, and in civil rights cases against police departments in general, it is not likely that plaintiffs can obtain information of comparable quality from any other source. *Kelly,* 114 F.R.D. at 667. Thus, discovery of the police personnel files is the only way through which Plaintiffs will have access to the information contained within. In addition, as stated above, Defendants' general assertion of harm to their internal investigatory system does not meet the *Kelly* threshold test for invoking the official information privilege.

### Privacy Rights

■■■■ Defendants also contend that disclosure of the requested documents would constitute an invasion of privacy. Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests. *See Breed v. United States Dist. Ct. for Northern District,* 542 F.2d 1114, 1116 (9th Cir.1976) (balancing the invasion of minor's privacy rights against the court's need for ward files); *Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1497 (10th Cir.1992), *cert. den.* —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993) (denying discovery of names of participants in a medical study due to privacy interests of the individual participants); *Cook v. Yellow Freight Sys., Inc.,* 132 F.R.D. 548, 550–51 (E.D.Cal.1990) (balancing targeted individual's right of privacy against public's need for discovery in employment discrimination case). The party or person whose privacy is affected may either object to the discovery

request or seek a protective order. *Laxalt v. McClatchy,* 809 F.2d 885, 889 (D.C.Cir.1987). Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted. *Perry v. State Farm Fire & Cas. Co.,* 734 F.2d 1441, 1447 (11th Cir.1984), *cert. den.* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure); *Rubin v. Regents of Univ. of Calif.,* 114 F.R.D. 1 (N.D.Cal.1986) (balancing university's interest in confidentiality against plaintiff's need to prove discrimination). A carefully drafted protective order could minimize the impact of this disclosure. *See Kelly v. City of San Jose,* 114 F.R.D. at 662, 666.

■■■■ In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential. *Kelly,* 114 F.R.D. at 660; *Denver Policemen's Protective Ass'n. v. Lichtenstein,* 660 F.2d 432, 435 (10th Cir.1981)[6]; *Martinez v. City of Stockton,* 132 F.R.D. 677, 681 (E.D.Cal.1990). Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. *Kelly,* 114 F.R.D. at 656.[7] However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "[T]hrough constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." *Kelly,* 114 F.R.D. at 660 (citations omitted).

---

**6.** The Tenth Circuit has adopted the "Colorado test" to determine whether information contained in personnel files is of such a highly personal or sensitive nature that it falls within the zone of confidentiality and should be shielded from discovery. Courts consider (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner. *Denver Policemen's Protective Ass'n v. Lichtenstein,* 660 F.2d at 435. Police personnel files and internal investigation files are not protected by the right of privacy when the documents "related simply to

the officers' work as police officers." *Id.; see Flanagan v. Munger,* 890 F.2d 1557, 1570 (10th Cir.1989).

**7.** The court in *Pagano v. Oroville Hospital,* 145 F.R.D. 683, 695–99 (E.D.Cal.1993), has recognized a privacy interest in medical records derived from Article 1, Section 1 of the California Constitution. The court found that this provision did not conflict with federal law and thus applied it to a motion to compel production of such documents. *Id. See infra* discussion.

Plaintiff's need for the requested personnel files is great. This Court recognizes that the information contained in police personnel files is unlikely to be available from any other source than Defendants' files.[8] As established earlier, in civil rights cases against police departments, plaintiffs cannot usually obtain information of comparable quality from any other source. *Kelly*, 114 F.R.D. at 667. The court in *Kelly* has stressed the strong public interest in uncovering civil rights violations of the type at issue in this case. *Id.* at 660. These interests would be substantially harmed if access to the relevant portions of the requested personnel files is denied.

In cases with similar factual situations as the case at bar, district courts in the Ninth Circuit have found that the privacy interests police officers have in their personnel files do not outweigh the civil rights plaintiff's need for the documents. The court in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal.1990), balancing the privacy interests of the individual police officers versus the need for discovery under state law,[9] allowed the discovery of personnel records subject to a protective order. The court in *Hampton v. City of San Diego* declined to apply state-codified privacy laws, but did conduct a general balancing test to determine the privacy interests of the officers in that case. 147 F.R.D. 227, 230 (S.D.Cal.1993). The court also balanced the need for the requested personnel files against the privacy rights of individual police officers, expressing concern only for the privacy of those *non-party* officers involved at the scene of the incident. *Id.* Finally, the court in *Miller* ordered discovery of personnel files despite the defendants' assertion of the right of privacy. 141 F.R.D. at 301 (C.D.Cal.1992). Thus, the existing case law suggests that the privacy interests of police officers have not

outweighed the civil rights plaintiff's need to discover the officer-defendants' personnel files.

▪ In applying the balancing analysis to the personnel files sought by Plaintiff in the case at bar, it is clear that Plaintiff's need for the documents will outweigh any invasion of Defendants' privacy rights, particularly under the limitations of a carefully crafted protective order. Defendants' privacy interests may be sufficiently protected with the use of a "tightly drawn" protective order, specifying that only Plaintiff, his counsel, and his experts may have access to the material, and that copies of such material will be returned to Defendants at the conclusion of the case. *See Kelly*, 114 F.R.D. at 662, 666, 671; *see Chism*, 159 F.R.D. at 535; *Hampton*, 147 F.R.D. at 231; *Miller*, 141 F.R.D at 301.

Considering the great weight that is afforded to federal civil rights laws, as articulated in *Kelly*, and the case law which supports discovery of police personnel files, this Court finds that Defendants' privacy interests in the personnel files are outweighed by Plaintiff's need for the documents. Accordingly, this Court grants Plaintiff's Requests No. 3, 4, and 5 to compel discovery of all relevant documents (discussed above) contained in Defendants' personnel files, subject to the protective order which is attached to this opinion.

### 3. Psychological and physical health records (Requests 6, 7, 8)

Plaintiff requests the Court to compel production of documents that concern or are at all relevant to, to any extent or degree, the mental, psychological or physical conditions of Defendants Leftwich, Mort, and Norvell at any and all times up to and including the present time.

---

8. This Court rejects defense counsel's statements that Plaintiff is able to obtain comparable information through interrogatories or depositions of the individual officer-defendants.

9. Although this Court recognizes the privacy interests of police officers, it does not endorse the *Martinez* court's application of the California

statutory privilege scheme to a federal claim. Rather, this Court recognizes a privacy interest under Art. 1, sect. 1 of the California Constitution as used in *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 695 (E.D.Cal.1993), and a general privacy interest, as invoked in *Hampton v. City of San Diego*, 147 F.R.D. 227, 230 (S.D.Cal.1993).

Defendants object to the requests on the following grounds:

### Overbreadth and Relevancy

■■■ Defendants contend that the requests are not relevant and are overbroad as to time and subject matter. The *Miller* court found psychological evaluations relevant to plaintiff's *Monell* claims against a city police department. 141 F.R.D. at 296. Such records may also be relevant to claims against the individual officer-defendants, as such defendants may assert certain immunities which require an evaluation of the officers' subjective state of mind. "Relevant psychological testing results pertaining to the incident at issue or relating to prior violent episode" are discoverable. *Mueller v. Walker*, 124 F.R.D. 654, 659 (D.Or.1989). This Court similarly finds that records of mental or psychological conditions are relevant to Plaintiff's excessive force claim against Defendants. However, this Court finds that the requests in their present form are overbroad. This Court finds that only those mental or psychological records which concern the incident at issue, prior episodes of violence, or the officers' propensity for violence of the type alleged in the complaint are relevant.

The records of Defendants' physical health conditions do not seem immediately relevant to the Court at this time. However, such issues of relevancy will be considered by the Court *in camera* to the extent that such records exist. *See infra* discussion.

### Patient-physician privilege

■■■ The patient-physician privilege does not exist at federal common law and the Ninth Circuit has not recognized a physician-patient privilege, nor a psychotherapist-patient privilege under federal law.[10] *In re*

*Grand Jury Proceedings*, 867 F.2d 562, 564–65 (9th Cir.1989), *cert. den.*, 493 U.S. 906, 110 S.Ct. 265, 107 L.Ed.2d 214 (1989). Nor would California's physician-patient privilege under California Evidence Code § 990–1007 be applicable to the instant federal claim. *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 690 (E.D.Cal.1993). "Since there is no analogous federal privilege, it would be too inconsistent and anomalous with federal privilege law to recognize California's statutory physician-patient privilege." *Id.* Therefore, this Court will not recognize the physician-patient privilege asserted by Defendants.

### Privacy Rights

The Supreme Court has recognized a limited privacy interest in the confidentiality of one's medical records, derived implicitly from the United States Constitution. *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64 (1977); *Doe v. Attorney General of U.S.*, 941 F.2d 780, 795–96 (9th Cir.1991) (establishing that information regarding a person's HIV status would fall within the ambit of the privacy protection afforded medical information); *Caesar v. Mountanos*, 542 F.2d 1064, 1067 n. 9 (9th Cir.1976), *cert. den.* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977) (holding that right to privacy encompasses doctor-patient and psychotherapist-patient relationship);[11] *Pagano v. Oroville Hosp.*, 145 F.R.D. at 695–98 (establishing that state constitutional right to privacy is consistent with federal constitution).

■■■ However, this privacy interest in medical records is not absolute. *Pagano v. Oroville Hosp.*, 145 F.R.D. at 696–97. This right is conditional, and a limited impairment of the right may be allowed if properly justi-

---

**10.** Although the court in *Smith v. McCormick*, 914 F.2d 1153 (1990), recognized that a defendant's communication with a psychiatrist is "protected up to the point of testimonial use of that communication," the issue in the instant case involves documentary evidence. Accordingly, this Court will not recognize the psychotherapist-patient, nor the physician-patient privilege under *Smith*.

**11.** This case does not change the fact that neither federal common law, nor the Ninth Circuit recognizes the physician-patient privilege, as discussed supra. *See In re Grand Jury Proceedings*, 867 F.2d 562, 564 (9th Cir.1989), *cert. den.*, 493 U.S. 906, 110 S.Ct. 265, 107 L.Ed.2d 214 (1989); *Pagano v. Oroville Hos.*, 145 F.R.D. 683, 690 (E.D.Cal.1991).

fied. *In re Grand Jury Proceedings,* 867 F.2d at 565. The state's interest must be balanced against the patient's right to maintain private medical records. *Id.* (citing *Hawaii Psychiatric Soc'y v. Ariyoshi,* 481 F.Supp. 1028, 1043 (D.Haw.1979)).

In the context of the discovery of police personnel files, federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. *Kelly,* 114 F.R.D. at 656. The court in *Pagano v. Oroville Hosp.,* 145 F.R.D. at 695, recognized a general state constitutional privacy right in medical records, derived from Article I, section 1 of the California Constitution. The court found this provision to be generally consistent with the Federal Constitution and applied it in the context of a discovery dispute involving medical records. *Id.*

The court in *Pagano* invoked a five-part test to determine the scope of the privacy interests asserted in response to a discovery request for medical records. The court engaged in a "conscious balancing of the many interests at stake" and considered the following factors: "(1) the probable encroachment of the individual's privacy right … and the magnitude of the encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment." *Id.* at 698–99.

■ Although Defendants in this case do not specify the source of the privacy interests which they assert, this Court will invoke the balancing test used in *Pagano* when determining the discoverability of Defendants' medical records. Due to the highly sensitive nature of such documents, this Court will conduct an *in camera* review of the medical records requested in Requests 6, 7, and 8.

## Lack of Possession, Custody, or Control

Under Federal Rule of Civil Procedure 34, documents sought in discovery motions must be within the "possession, custody or control" of the party upon whom the request is served. Defendants claim that they lack possession, custody, or control of certain psychological evaluations of the individual officer-defendants that were conducted by a non-employee physician prior to the officers' hiring at the police department's request. Defendants claim that the results of such evaluations were returned to the non-party physician and that such evaluations are thus not in the possession, custody, or control of the City of Concord.

■ Defendants' argument is unpersuasive, and this Court finds that Defendants are in control of these psychiatric evaluations. "The phrase 'possession, custody or control' is in the disjunctive and only one of the numerated requirements need be met." *Cumis Ins. Society, Inc. v. South–Coast Bank,* 610 F.Supp. 193, 196 (N.D.Ind.1985). Thus, actual possession of the requested documents is not required. A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document. *Buckley v. Vidal,* 50 F.R.D. 271, 274 (S.D.N.Y.1970).

The term "control" includes the "legal right of the producing party to obtain documents from other sources upon demand." *Biben v. Card,* 119 F.R.D. 421, 425 (W.D.Mo. 1987) (citing *Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984)); *see also Resolution Trust Corp. v. Deloitte & Touche,* 145 F.R.D. 108, 110 (D.Colo.1992) (holding that party with right to obtain regulatory agency documents upon demand has "control" of such material within the meaning of Rule 34); *Biben v. Card,* 119 F.R.D. at 425 (ordering party to obtain documents from regulatory agency in response to discovery request); *Japan Halon Co. v. Great Lakes Chem. Corp.* 155 F.R.D. 626, 627 (N.D.Ind.1993) (finding that close business relationship con-

stituted "control" of documents held by non-party); *United States v. Faltico,* 586 F.2d 1267, 1270 (8th Cir.1978) (affirming that parent/subsidiary corporate relationship constituted "control" over documents).

■ It is clear that the psychiatric evaluations conducted by the non-party physician were performed at the request of Defendant City of Concord in the course of the City of Concord's hiring process. It seems inconceivable that the City lacks the ability to obtain such evaluations upon demand. Moreover, the individual officer-defendants have the legal right to obtain such documents. *See Bowman v. Consol. Rail Corp.,* 110 F.R.D. 525, 526 (N.D.Ind.1986) (finding that employee had legal right to obtain information submitted to Railroad Retirement Board in connection with application for benefits). Accordingly, this Court finds that Defendants do indeed have control over the requested psychiatric evaluations. Defendants shall obtain all psychiatric evaluations from the non-party physician and submit them to this Court for *in camera* review, as outlined below.

### 4. Citizen Complaints (Requests 9, 10, 11)

Plaintiff requests the Court to compel production of any and all documents that concern or are at all relevant to any formal or informal complaint made against or about Defendants Leftwich, Mort, Norvell from any source and concerning any subject matter. This request includes documents concerning all complaints and other disciplinary or internal police review of activities listed for defendants in the file maintained by the Internal Affairs Bureau; documents concerning each incident listed on the disciplinary record for defendant; documents concerning all complaints and other disciplinary or internal police review of activities of the defendants which were investigated under the supervision of their commanding officers during their various assignments with the Concord Police Department; and all information contained in the computers maintained by the Internal Affairs Bureau of the Concord Police Department or any other division of the Concord Police Department concerning the complaints made against the defendants.

Defendants object to this request on the following grounds:

### Overbreadth and Relevancy

■ Defendants assert that this request is overbroad as to time, subject matter, and officers, and is not relevant. Records of complaints against defendant officers relating to their use of excessive force has been found to be relevant to a plaintiff's civil rights claim. *Hampton,* 147 F.R.D. at 228–29; *Miller,* 141 F.R.D. at 296–97. Using the relevancy standard set forth above, this Court finds that citizen complaints lodged against Defendants are relevant and not overbroad, as such information may be crucial to proving Defendant's history or pattern of such behavior.

### Self-critical analysis privilege

■ Defendants claim that records of complaints are privileged under the self-critical analysis privilege. As stated above, neither the Ninth Circuit nor the Supreme Court has recognized the self-critical analysis privilege. *Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 425, n. 1 (9th Cir.1992). Furthermore, the self-critical analysis privilege should not be applied to police personnel files and records of internal affairs investigations in civil rights suits against police officers. *Kelly v. City of San Jose,* 114 F.R.D. at 664–66. This Court declines to apply the self-critical analysis privilege and instead analyzes the issues under the official information privilege set forth below.

### Official information privilege

■ Defendants assert that the requested complaints are shielded from discovery under the official information privilege. Pursuant to the above-mentioned *Kelly* threshold test for invoking the official information privilege, Defendants have failed to show how

the disclosure of citizen complaints subject to a protective order would create a substantial risk of harm to significant governmental or privacy interests. *Kelly*, 114 F.R.D. at 670. Defendants first assert that witnesses and officers would not express their views as freely or with as much candor if they believe their statements will be revealed to those directly involved in the internal affairs investigation. Thus, Defendants are asserting that citizens will speak freely and honestly only if their anonymity is assured. The court in *Kelly* established that the possibility of disclosure would not discourage citizens from filing complaints against police officers. 114 F.R.D. at 666. Furthermore, the court reasoned that most citizens who lodge complaints against the police do not bother to think about the possibility of future disclosure and if they did think about it, "would want their complaint to help someone else who had suffered from a similar source." *Id.* The court then concludes, "[i]t follows that, in the absence of special circumstances proved by law enforcement defendants, courts should ascribe little weight to a police department's purported interest in preserving the anonymity of citizen complainants." *Id.*

Defendants also assert that disclosure of citizen complaints would adversely impact the public's interest in having the police department critically evaluate the quality of its services. Such a general assertion of harm to the public interest has been deemed insufficient to meet the threshold test for invoking the official information privilege. *Id.* at 672. In the context of civil rights claims against police departments "a general assertion that a police department's internal investigatory system would be harmed by disclosure of the documents is insufficient." *Chism,* 159 F.R.D. at 534. Accordingly, this Court finds that the requested records of complaints lodged against Defendants are not privileged under the official information privilege.

### Privacy Rights

█ Defendants make a general assertion of the privacy interests of the police officers and witnesses who lodged the complaints. The court in *Kelly* rejects Defendants' reasoning, because a citizen who makes a complaint is not analogous to a confidential informant whose safety may be at risk if anonymity is lost. 114 F.R.D. at 666. "[C]ourts should be less solicitous of finding a significant privacy interest in keeping secret the names of witnesses providing factual information about events which are no longer the subject of investigation or prosecution." *Chism,* 159 F.R.D. at 535 (citing *Kelly,* 114 F.R.D. at 662). Thus, the privacy interests of the citizen complainants in this case are low, and in the absence of special circumstances, little weight should be given to Defendants' interest in preserving the anonymity of these citizen complainants. *Kelly,* 114 F.R.D. at 666.

█ Defendants, however, claim that the citizen complaints sought by Plaintiff should not be subject to discovery because they were "unfounded, meaning that the acts complained of did not occur." The court in *Martinez* followed Defendants' reasoning and did not allow discovery of excessive force complaints against defendants because the complaints were "not sustained" and the defendants were "exonerated." 132 F.R.D. at 683–84. The court reasoned that there were "strong principles of privacy associated with these sensitive records." *Id.* at 684. Nevertheless, this Court declines to follow *Martinez* on this point. The court in *Kelly* emphasized the importance of disclosure in the area of citizen complaints. 14 F.R.D. at 666. A request for citizen complaints against police officers must be evaluated against the backdrop of the strong public interest in uncovering civil rights violations and enhancing public confidence in the justice system through disclosure. *Kelly,* 114 F.R.D. at 660–61; *see Wood v. Breier,* 54 F.R.D. 7, 11 (D.D.C.1972); *Denver Policemen's Protective Ass'n v. Lichtenstein,* 660 F.2d 432, 436 (10th Cir.1981). Accordingly, this Court finds that neither the defendant-officers' privacy interests nor the citizen complainants' privacy interests outweigh the need for disclosure of the requested records of complaints lodged against Defendants. Plaintiff's Requests No.

9, 10, and 11 to compel documents that concern formal or informal complaints made against Defendants is granted, subject to the protective order which is attached to this opinion.

### 5. Guidelines, directives, policy statements (Request 13)

Plaintiff requests the Court to compel production of, for the period 1985 to the current date, all police guidelines, directives, policy statements, procedures, and training materials, in any form and of any type, concerning, to any extent or degree, police policy, custom or practice regarding the discipline of officers generally, and specifically, discipline for the violation of constitutional rights.

 Defendant objects on the grounds that the request is not relevant to any issue in this matter nor reasonably calculated to lead to discovery of admissible evidence. The existence or non-existence of adequate guidelines for disciplining officers is relevant to Plaintiff's claims against the city under the *Monell* analysis, because such evidence may show a pattern or practice of such civil rights violations alleged in the complaint. 436 U.S. 658, 698, 98 S.Ct. 2018, 2040, 56 L.Ed.2d 611 (1978). In addition, *Kelly* encourages the disclosure of manuals, memoranda, guidelines, and other documents that reflect the policies of the police department. 114 F.R.D. at 666. "A police department's interest in not permitting the general public to have access to such materials may be weighty.... [but] [t]he weight of law enforcement's interest drops dramatically, however, when a court imposes a tightly drawn protective order on the disclosure of such material, so that only counsel for plaintiff and perhaps his expert has access to it." *Id.* Thus, this Court concludes that police guidelines, policy statements, and other materials contained in Request No. 13 are relevant and will allow discovery of such material subject to the protective order which is attached to this opinion.

### B. *Motion for Sanctions*

#### 1. *Legal Standards*

Under Federal Rule of Civil Procedure 37(a)(4), if a motion to compel is granted, or if the

requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Under the Northern District of California Local Rule 230–4(a),

[t]he court will entertain no motion pursuant to Rules 26 through 37, Federal Rules of Civil Procedure, unless counsel shall have previously conferred concerning all disputed issues. If counsel for the moving party seeks to arrange such a conference and counsel for the party against whom the motion will be made willfully refuses or fails to confer, the judge ... may order the payment of reasonable expenses, including attorney's fees, pursuant to Rule 37(a)(4), Federal Rules of Civil Procedure and Local Rule 100–3.

A certificate of compliance with the above cited rule is required to be filed by counsel for the moving party. *See* Local Rule 230–4(b).

#### 2. *Legal Analysis*

Before this motion to compel documents was filed, Plaintiff's counsel sent two sets of Requests for Document Production to Defendants' counsel, one on January 4, 1995 and the other on March 2, 1995. In response to both requests, Defendants objected and raised a number of privileges. Plaintiff's counsel then sent a letter to Defendants' counsel on April 5, 1995, outlining why he thought Defendants' objections were unfounded. The letter urged Defendants' com-

pliance by noon on April 7, 1995. When Defendants did not comply, Plaintiff filed the instant motion on April 12, 1995.

 Sending a letter to the opposing party demanding compliance with a discovery request is not what this Court regards as an earnest attempt to "meet and confer" on the issues. Rather, a live exchange of ideas and opinions is required. Accordingly, this Court will not impose sanctions on Defendants because it appears that Plaintiffs did not make an adequate attempt to meet and confer within the meaning of Local Rule 230–4(a) before filing this motion to compel production of documents.

## III. ORDER

For the foregoing reasons, the Court hereby ORDERS the following:

1. Subject to the attached Protective Order, Plaintiff's motion for production of documents is GRANTED, as outlined above, with respect to Requests Numbered: 1 (internal affairs documents); 3, 4, and 5 (personnel files); 9, 10 and 11 (citizen complaints); and 13 (guidelines and policy statements).

2. Documents constituting Requests Numbered 6, 7, and 8 (psychological and physical health records) shall be submitted to this Court for *in camera* review, as specified below.

3. Defendants are hereby ORDERED to obtain and submit to this Court for *in camera* review those psychiatric evaluations maintained by non-party entities, no later than 10 days from the date of this Order. If for any reason Defendants are denied access to such documents, Defendants' counsel shall notify this Court promptly.

4. Defendants are hereby ORDERED to provide clear and proper verification that the documents, or parts thereof, previously supplied to Plaintiff in response to Requests 1(a) and 2, 3, 4, and 5 are *all* such documents of that kind obtainable by the defense. (See Plaintiff's reply brief in this matter, which requests such verification).

5. Defendants are hereby ORDERED to provide verification to Plaintiff that all documents sought in Requests 1(e), 6, 7, 8, and 14, to which Defendants responded that they were not in "possession, custody, or control," are either unattainable by Defendants after making a reasonable effort to secure such documents, or that such documents do not exist. (See Plaintiff's reply brief in this matter, which requests such verification). This in no way alters Defendants' obligation to provide to this Court, for *in camera* review, those psychiatric evaluations currently held by a non-party physician, as described in item 3 of this Order.

6. Defendants are hereby ORDERED to provide verification to Plaintiff that all documents supplied to Plaintiff pursuant to General Order 34 are *all* such documents of that kind obtainable by the defense.

7. Defendants are hereby ORDERED to produce the documents and verifications specified above within 10 days of the date of this Order, subject to the attached Protective Order.

8. Plaintiff's motion for sanctions under Federal Rule of Civil Procedure 37(a)(4) is DENIED.

9. The parties are hereby ORDERED to have all depositions completed by August 31, 1995.

10. A further discovery conference is set for September 6, 1995 at 10:30 a.m., in Courtroom 4, U.S. Courthouse, 1301 Clay Street, Oakland, CA 94612. The parties shall come prepared to discuss possible dates for a settlement conference in this matter.

11. The parties are hereby ORDERED to meet and confer on the issue of setting a trial date. The following starting dates for trial are available in Judge Wilken's courtroom: 11/27/95, 12/4/95, 12/18/95, and 1/29/96. Within 5 days of the issuance of this Order, the parties shall inform the Court of the trial dates to which they have stipulated. If no stipulation is reached, the Court will choose the date of the trial.

IT IS SO ORDERED.